# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### 3:24-CV-00004-RJC-SCR

| | |
|---|---|
| **STEPHEN ROBEY AND DOROTHY ROBEY, AS LAWFUL GUARDIANS AD LITEM FOR MINOR CHILD J.R.,** | ) ) ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CHARLOTTE-MECKLENBURG BOARD OF EDUCATION, et al.,** | ) ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND RECOMMENDATION

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss ("Motion")

(Doc. No. 3), as well as the parties' briefs and exhibits. (Doc. Nos. 3-1, 3-2, 7 & 8).

The Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.

§ 636(b)(1) and is ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the

undersigned respectfully recommends that Defendants' Motion to Dismiss be <u>granted in part</u> and

<u>denied in part</u>, as discussed below.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court accepts the facts in Plaintiffs' Complaint as true for the purposes of considering

Defendants' Partial Motion to Dismiss.[1]

---

[1] Plaintiffs attached the Complaint to their response in opposition to the Motion to Dismiss. (Doc. No. 7-1). Based on the Court's review of the Complaint as removed in this action (Doc. No. 1-1) and the Complaint attached to

On October 26, 2023, Plaintiffs filed their Complaint in Mecklenburg County Superior Court. (Doc. No. 1-1). The action was removed to this Court on January 3, 2024. (Doc. No. 1). Plaintiffs brings claims against (1) Charlotte-Mecklenburg Board of Education (the "Board"); (2) Superintendent Crystal L. Hill ("Hill") in her official and individual capacities; (3) Principal of Providence High School Tracey Harrill ("Harrill")[2] in her official and individual capacities; and (4) school counselor Adrian Hodge ("Hodge") in her official and individual capacities. (Doc. No. 1-1). Plaintiffs' Complaint asserts the following claims: (1) 42 U.S.C. § 1983 claim for procedural due process violation; (2) 42 U.S.C. § 1983 claim for substantive due process violation; (3) violation of the North Carolina constitution; (4) gross negligence; (5) gross negligence in violation of N.C. Gen. Stat. § 115C-376.5 requiring a school-based mental health plan; (6) intentional infliction of emotional distress; and (7) negligent infliction of emotional distress. Id. On January 9, 2024, Defendants filed their Motion to Dismiss, which has been fully briefed and is ripe for disposition. (Doc. No. 3).

J.R. is the minor child of Stephen Robey ("Mr. Robey") and Dorothy Robey ("Mrs. Robey") (collectively, the "Plaintiffs"). (Doc. No. 1-1 ¶¶ 2-3). In or around late August or early September 2022, J.R. was a 15-year-old student at Providence High School. Id. ¶¶ 10, 19. Around that time, Dr. David Brigham ("Brigham"), J.R.'s Bio-Med teacher, had J.R. report to Hodge, the school counselor, after noticing marks on J.R.'s arms while taking a blood pressure test in class. Id. ¶¶ 7, 19. J.R. subsequently had a meeting with Hodge, where J.R. told Hodge that "the scars were older self-harming scars, from earlier in the summer," and that J.R. "[took] an overdose,

<hr>

Plaintiffs' response (Doc. No. 7-1), the documents appear to be identical. However, to the extent the Complaint attached to Plaintiffs' response is not identical to the Complaint as removed, the Court has not considered any changes in docket number 7-1 because Plaintiffs did not amend or otherwise move to amend their Complaint. The Court relied on the Complaint at docket number 1-1 when considering the Motion.

[2] The Complaint refers to Harrill as both "Harrill" and "Harrell." (Doc. No. 1-1 ¶¶ 6, 39). For ease of reference and clarification, the Court refers to Principal Tracey Harrill as "Harrill" herein, which is the name that appears on the caption of the Complaint and this Court's docket.

which made her sick." Id. ¶ 20. Hodge advised J.R. that she would not tell J.R.'s parents about the information that J.R. shared, and then sent J.R. back to class. Id. ¶ 21.

After the meeting between Hodge and J.R., Defendants did not inform J.R.'s parents of the marks on her arm, the alleged overdose, or the information J.R. shared. Id. ¶¶ 20, 25-31. "[N]o procedures were followed, no notice was given to Plaintiffs, no calls were made to [Plaintiffs], no referrals were made, no agencies were contacted [such as the Department of Social Services ("DSS") or Child Protective Services], and no steps were taken. Basically, nothing was done." Id. Additionally, upon information and belief, no documentation was created by Hodge about the initial report or meeting. Id. ¶ 22.

Later, on or about February 2, 2023, while in class, one of J.R.'s teachers noticed J.R. was pale, "saw additional scars," and notified Hodge. Id. ¶ 32. Hodge spoke with J.R. and called Mr. Robey. Id. ¶¶ 10, 33. Mr. Robey came to the school to pick up J.R. Id. ¶ 15. Hodge informed Mr. Robey for the first time of the marks and scars on J.R.'s arm, that J.R. had been self-harming as a way to deal with stress, and that J.R. had previously tried to overdose by taking pills. Id. ¶¶ 11, 13. DSS was also notified that day, and has since closed its case. Id. ¶¶ 29-30.

That same day, J.R. showed Mr. Robey her arm, which "had more than thirty scars on it, from self-harming cuts." Id. ¶ 14. While J.R. slept, Mr. Robey "searched and found the blade that she was using to cut herself, some pills, as well as some suicide letters." Id. ¶ 16. On advice of a family physician, Plaintiffs took J.R. to the Emergency Room. Id. ¶¶ 17-18. J.R. was admitted and spent the night in the Emergency Room until the next day when a bed became available in the Adolescent Behavioral Health Unit. Id. ¶ 18. While at the hospital, J.R. told Plaintiffs about her meeting with Hodge in late August or early September 2022, during which Hodge first learned of

Plaintiffs' self-harming marks and attempted overdose, but did not inform Plaintiffs or otherwise act.  Id. ¶¶ 19-20.

Afterwards, Plaintiffs raised their concerns that nothing was initially done with the school. Id. ¶ 39.  They spoke with Dean of Students Jennifer Ryan ("Ryan"), who advised Plaintiffs that Principal Harrill, Ryan, and the school counselors held an internal meeting.  Id.  Plaintiffs did not attend the internal meeting, but upon information and belief, during this meeting "J.R.'s ordeal was discussed and one of the counselors who was a parent voiced concern that they would want to be told."  Id. ¶ 40.  Consequently, Ryan advised Plaintiffs that the school had agreed to implement a change where the parents would be notified if self-harming or marks to this degree were found on a student.  Id. ¶ 41.  Mr. Robey requested "a copy of the changes in school policy," but Ryan told him "they were not going to put anything in writing, that is why she was bringing this to his attention, so it can never happen to another family."  Id. ¶ 42.

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"The existence of subject matter jurisdiction is a threshold issue, which this court must address before addressing the merits of [Plaintiffs'] claim[s]."  Jones v. Am. Postal Workers Union, 192 F.3d 417, 422 (4th Cir. 1999).  The United States Courts are courts of limited jurisdiction and "may only exercise that jurisdiction which Congress has prescribed."  Chris v. Tenet, 221 F.3d 648, 655 (4th Cir. 2000) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994)).  Subject-matter jurisdiction is so limited, in fact, that federal "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  Hertz Corp. v. Friend, 559 U.S. 77, 94 (2010) (citations omitted).  "No party can waive the defect, or consent to [subject-matter] jurisdiction.  No court can ignore the defect;

rather a court, noticing the defect, must raise the matter on its own." Wis. Dep't of Corrs. v. Schacht, 524 U.S. 381, 389 (1998) (internal citations omitted); see also Ashcroft v. Iqbal, 129 S. Ct. 1937, 1945 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt." (citing Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006); United States v. Cotton, 535 U.S. 625, 630 (2002)).

**B. Rule 12(b)(2)**

"When a court's personal jurisdiction is properly challenged by a Rule 12(b)(2) motion, the jurisdictional question thus raised is one for the judge, with the burden on the plaintiff ultimately to prove the existence of a ground for jurisdiction." Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989) (citing 2A Moore's Fed. Prac. ¶ 12.07[2.2]). In cases where "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Grayson v. Anderson, 816 F.3d 262, 268 (4th Cir. 2016); see also Universal Leather, LLC v. Koro AR, S.A., 773 F.3d 553, 561 (4th Cir. 2014). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." Combs, 886 F.2d at 676; see also Universal Leather, LLC, 773 F.3d at 558. However, courts need not assume the truth of allegations in a pleading which are contradicted by affidavit. Wolf v. Richmond Cnty. Hosp. Auth., 745 F.2d 904, 908 (4th Cir. 1984); Clark v. Remark, 993 F.2d 228, 1993 WL 134616, at *2 (4th Cir. 1993) (unpublished table decision).

## C. Rule 12(b)(6)

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiffs' "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. Id. at 678-79. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. at 679; see also Anand v. Ocwen Loan Serv., LLC, 754 F.3d 195, 198 (4th Cir. 2014) (recognizing the court does not accept as true legal conclusions couched as a factual allegations). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555). Although the pleading requirements stated in Rule 8 of the Federal Rules of Civil Procedure mark "a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court assumes their truth and then determines whether they plausibly give rise to an entitlement to relief. Id. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The sufficiency of the factual allegations aside, "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." Neitzke v. Williams, 490 U.S. 319, 326 (1989). Indeed, where "it is clear that no relief could be granted under any set of facts that could be prove[n] consistent with the allegations . . . a claim must be dismissed." Id. at 327 (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

### III. DISCUSSION

#### A. Section 1983 Claims

Under 42 U.S.C. § 1983,

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Thus, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." Mauler v. Arlotto, 777 F. App'x 59, 60 (4th Cir. 2019) (per curiam).

"Municipalities are 'persons' within the meaning of § 1983." Franklin v. City of Charlotte, 64 F.4th 519, 535 (4th Cir. 2023) (quoting Monell v. Dep't of Soc. Servs. of N.Y.C., 436 U.S. 658, 690 (1978)). Thus, a suit may be brought against a municipality for a federal constitutional deprivation "when the municipality undertook the allegedly unconstitutional action pursuant to an 'official policy' or 'custom.'" Starbuck v. Williamsburg James Cnty. Sch. Bd., 28 F.4th 529, 532-33 (4th Cir. 2022) (quoting Monell, 436 U.S. at 690-91). Monell liability under § 1983 cannot be predicated upon a respondeat superior theory. Franklin, 64 F.4th at 535. "Liability arises only when the offensive acts are taken in furtherance of municipal policy or custom." Jones v. McComas, No. 1:23-cv-215-KDB, 2023 WL 774240, at *2 (W.D.N.C. Oct. 31, 2023). School boards and municipalities "are indistinguishable for purposes of § 1983." Riddick v. Sch. Bd. of City of Portsmouth, 238 F.3d 518, 522 n.3 (4th Cir. 2000) (quoting Monell, 436 U.S. at 696).

There are three elements for Monell liability. Jones, 2023 WL 7174240, at * 2. "First, the plaintiff must plausibly allege a constitutional harm that stems from the acts of a municipal employee 'taken in furtherance of some municipal policy or custom.'" Id. (quoting Milligan v. City of Newport News, 743 F.2d 227, 229 (4th Cir. 1984)). "Second, the plaintiff must allege facts showing that the policy's creation is fairly attributable to the municipality." Id.; Spell v. McDaniel, 824 F.2d 1380, 1389 (4th Cir. 1987). "Third, the plaintiff must allege an affirmative causal link between the policy or custom, and the particular injury suffered by the plaintiff." Jones, 2023 WL 7174240, at *2; Franklin 64 F.4th at 536-37.

With respect to the first element,

[A] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that 'manifest[s] deliberate indifference to the rights of citizens'; or (4) through a practice that is so 'persistent and widespread' as to constitute a 'custom or usage with the force of law.'

Starbuck, 28 F.4th at 533 (quoting Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003)).  "No matter which of these paths [to show a policy or custom that] a plaintiff takes, the 'official policy' itself must 'inflict' the alleged injury for the municipality to be liable under § 1983."  Franklin, 64 F.4th at 536 (quoting Monell, 436 U.S. at 694) (alterations in original omitted).

The existence of a custom or usage may be found where a plaintiff alleges persistent and widespread practices, which although not authorized by written law, are so permanent and well-settled as to have the force of law.  Spell, 824 F.2d at 1387 (quoting Monell, 436 U.S. at 690-91).  "Custom and usage, in the sense of persistent and widespread . . . practices by municipal agents and employees, may be attributed to a municipality when the duration and frequency of the practices warrants a finding of either actual or constructive knowledge by the municipal governing body that the practices have become customary among its employees" and "their failure, as a matter of specific intent or deliberate indifference, thereafter to correct or stop the practices."  Id. at 1387, 1391.  "Actual knowledge may be evidenced by recorded reports to or discussions by a municipal governing body."  Id.  at 1387.  "Constructive knowledge may be evidenced by the fact that the practices have been so widespread or flagrant that in the proper exercise of its official responsibilities the governing body should have known of them."  Id.  Constructive knowledge may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities and official duty of responsible policymakers to be informed, or combinations of these.  Id. at 1391.  "The inculpating knowledge, whether actual or constructive, may be either that of the municipal governing body itself, or of municipal officials having final policymaking authority in municipal law enforcement matters."  Id.  Sporadic or isolated violations will not give rise to liability.  Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 403 (4th Cir. 2014).  "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order

to establish a custom or practice." Lytle, 326 F.3d at473 (quoting Kopf v. Wing, 942 F.2d 265, 269 (4th Cir.1991)).

In addition, "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." Connick v. Thompson, 563 U.S. 51, 61 (2011). "A [school board's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id. (citing Oklahoma City v. Tuttle, 471 U.S. 808, 822-23 (1985)). "To satisfy the statute, a [school board's] failure to train its employees in a relevant respect must amount to 'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" Id. (quoting City of Canton, Oh. v. Harris, 489 U.S. 378, 388 (1989)) (alterations in original). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." Connick, 563 U.S. at 61 (quoting Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 410 (1997)) (alteration in original). "Mere negligence is insufficient to impose section 1983 liability on a municipality for alleged failure to train." S.F. v. Union Cnty. Bd. Of Educ., No. 3:23-CV-00139-FDW-DCK, 2024 WL 1316229, at *7 (W.D.N.C. Mar. 27, 2024) (quoting Jordan, 15 F.3d at 341). "Moreover, neither a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone." Id. "A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train." Id. (quoting Connick, 563 U.S. at 62); Connick, 563 U.S. at 61-62 ("Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the

policymakers choose to retain that program."); Doe v. Broderick, 225 F.3d 440, 456 (4th Cir. 2000). "[O]nly if, 'in light of the duties assigned to specific . . . employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of the constitutional rights,' can [a school board] reasonably 'be said to have been deliberately indifferent to that need.'" Sciacca v. Durham Cnty. Bd. Of Educ., 509 F. Supp. 3d 505, 518-19 (M.D.N.C. 2020) (quoting Jordan, 15 F.3d at 341) (alterations in original).

Defendants argue that Plaintiffs' Complaint fails to sufficiently allege a policy or custom attributable to the Board that caused Plaintiffs' injuries as required for the Board's liability. Plaintiffs assert the Board is liable because of its custom or usage and/or failure to train. The Court assumes *arguendo* that Plaintiffs have sufficiently alleged constitutional violations,[3] and concludes that Plaintiffs fail to allege a policy or custom attributable to the Board.

First, as to Plaintiffs' theory that the Board is liable based on a widespread custom or usage, Plaintiffs have not alleged facts of a persistent and widespread practice of failing to respond to and notify parents of similar instances nor that the Board had actual or constructive notice of such practice. Rather, Plaintiffs rely on the single incident involving J.R. and the resulting school meeting. Single or isolated incidents do not create a custom or practice. Owens, 767 F3d at 403. Instead, the Board must be on notice in some way such as through numerous prior instances of unconstitutional conduct in order to establish a custom or practice. Lytle, 326 F.3d at 473. The meeting that occurred after Plaintiffs reported their concerns to Defendants does not establish a custom or practice because Plaintiffs have not alleged sufficient facts that the Board was on notice of any custom or practice prior to August 2022. The meeting only establishes that *after* the alleged constitutional violation occurred the Defendants were put on notice and took action to address

---

[3] The Court expresses no opinion at this time on whether the Complaint alleges actual constitutional violations.

Plaintiffs concerns. Franklin, 64 F.4th at 536-37 (concluding city was not liable under § 1983 for officer's shooting of plaintiff where final policymaker's "post-facto approval of an internal shooting investigation cannot possibly have caused the constitutional violation" and observing that reversing the decision "cannot undo what is done.").

Likewise, Plaintiffs' theory that the Board is liable for failure to train fails because the Complaint does not allege sufficient facts of a pattern of similar alleged constitutional violations by untrained employees and again relies on the single incident involving J.R.[4] Plaintiffs do not allege any other incident involving Hodge failing to notify parents or more generally involving a similar pattern of untrained employees causing similar alleged violations. In light of the absence of allegations of similar instances the Court also does not find that the Complaint sufficiently alleges that the need for Hodge to have more or different training was so obvious so as to have been a conscious choice or deliberate indifference on the part of the Board. A.G. v. City of Statesville, No. 5:20-CV-00165-KDB-DCK, 2021 WL 2582577, at *10 (W.D.N.C. June 23, 2021) ("Plaintiff has only alleged that a single school resource officer . . . harmed L.G. . . . and that two untrained school employees negligently responded to the officer's improper conduct. Thus, Plaintiff's Section 1983 allegations do not amount to a plausible claim of a deliberate 'policy' of the Board. . . . Further, the need for specific additional training for teachers on how to handle a situation where a school resource officer mistreats a disabled student cannot be said to be *'obvious' in light of the absence of any prior incident similar to the one challenged by Plaintiff* or at least a showing that such an issue was likely to arise in the Iredell-Statesville schools (as distinguished from merely being a possibility). Thus, the Court finds that Plaintiffs' Section 1983 claim cannot

---

[4] In the Complaint, Plaintiffs mention a recent suicide of a student at a different high school but do not otherwise allege how this incident creates a custom or usage nor whether the other high school administrators or the Board were aware of any underlying issues and is insufficient alone to create a custom or practice or claim for failure to train. (Doc. No. 1-1 ¶ 62).

proceed." (emphasis added)); Sciacca, 509 F. Supp. 3d at 518 ("While Plaintiffs attempt to identify specific training deficiencies, they still have not alleged any other incident involving Singleton. Nor do the allegations reflect any deliberate or conscious choice by the Board regarding its training of Singleton that led to the violation of Andrew's right to bodily integrity.").

The Board may not be held liable on a theory of respondeat superior, and Plaintiffs' Complaint must plead sufficient facts of a policy or custom that is attributed to the Board itself. Plaintiffs' Complaint, relying on a single incident and lack of notice, does not allege sufficient facts to state a policy or custom for the § 1983 claims against the Board. Accordingly, the undersigned respectfully recommends that Defendants' Motion be granted with respect to Plaintiffs' § 1983 procedural due process and § 1983 substantive due process claims against the Board only.[5]

For sake of clarity, the Court observes that Plaintiffs' Complaint alleges claims under § 1983 against all Defendants, including the individual Defendants in their individual capacities. (Doc. No. 1-1 ¶¶ 50-79). Defendants' briefing does not substantively address Plaintiffs' § 1983 claims against the individuals in their individual capacities. (Doc. No. 3-1, at 4-8; Doc. No. 8, at 1-4). As such, the undersigned did not consider Plaintiffs' § 1983 claims against the individual Defendants in their individual capacities and expresses no opinion or recommendation on those claims. Cantrell v. Frame, No. 2:18-cv-01106, 2019 WL 1234335, at *2 (S.D. W. Va. Mar. 18, 2019) (rejecting magistrate judge's finding of qualified immunity where defendants failed to properly invoke the defense at the motion to dismiss stage, noting "the Fourth Circuit has been strict in declining to sua sponte consider qualified immunity when not properly presented to the

---

[5] Defendants also argue Plaintiffs fail to allege a state-created danger sufficient to create liability. Plaintiffs concede that they did not bring a state-created danger claim and are not seeking to impose liability under such doctrine. (Doc. No. 3-1 at 6; Doc. No. 7 at 10-11).

district court: 'Our cases have been consistent on one thing: that to be preserved for appeal, the defense of qualified immunity must be raised in a timely fashion before the district court.'" (quoting <u>Noel v. Artson</u>, 297 F. App'x 216, 218 (4th Cir. 2008)); <u>Suarez Corp. Indus. v. McGraw</u>, 125 F.3d 222, 226 (4th Cir. 1997) (declining to consider qualified immunity defense not squarely before the district court and noting "we have refused to consider <u>sua</u> <u>sponte</u> a defense of qualified immunity in a § 1983 action when it was not properly preserved below." (citing <u>Buffington v. Balt. Cnty., Md.</u>, 913 F.2d 113, 120-22 (4th Cir.1990)).

## B. State Law Claims

### 1. Governmental Immunity – State Law Claims Against the Board

"The 'common law doctrine of sovereign immunity' bars suits against the State unless it 'has consented or waived its immunity.'" <u>Estate of Graham v. Lambert</u>, 898 S.E.2d 888, 895 (N.C. 2024) (quoting <u>State ex rel. Stein v. Kinston Charter Acad.</u>, 866 S.E.2d 647, 655 (N.C. 2021)). "Cities, counties, and other localities are 'recognizable units that collectively make up' the State and enjoy a slice of its sovereign power." <u>Id.</u> (quoting <u>Dawes v. Nash Cnty.</u>, 584 S.E.2d 760, 762 (N.C. 2003)). "For that reason, a 'portion of the State's sovereign immunity' trickles down 'to local governments.'" <u>Id.</u> (quoting <u>Wray v. City of Greensboro</u>, 802 S.E.2d 894, 898 (N.C. 2017)). "Governmental immunity is that portion of the State's sovereign immunity which extends to local governments." <u>Wray</u>, 802 S.E.2d at 898. This "'more limited governmental immunity covers only the acts of a municipality or a municipal corporation committed pursuant to its governmental functions.'" <u>Providence Volunteer Fire Dep't v. Town of Weddington</u>, 876 S.E.2d 453, 461-62 (N.C. 2022) (quoting <u>Evans v. Hous. Auth. of City of Raleigh</u>, 602 S.E.2d 668, 670 (N.C. 2004)). Thus, "North Carolina municipalities enjoy governmental immunity from state common-law tort claims arising out of their performance of governmental, as opposed to proprietary, functions."

Evans v. Chalmers, 703 F.3d 636, 655 (4th Cir. 2012) (citing Patrick v. Wake Cnty. Dep't of Human Servs._, 655 S.E.2d 920, 923 (N.C. Ct. App. 2008)).  "Local boards of education are expressly entitled to the defense of governmental immunity under North Carolina law."  R.A. v. Iredell-Statesville Sch. Dist. Bd. of Educ., No. 5:20-CV-00192-KDB-SCR, 2023 WL 8461186, at *3 (W.D.N.C. Dec. 6, 2023).

Governmental immunity is also "waivable by clear statutory language."  Estate of Graham, 898 S.E.2d at 896 (citing  Guthrie v. N.C. State Ports Auth., 299 S.E.2d 618, 625 (N.C. 1983)).  A board of education can waive its governmental immunity by purchasing liability insurance.  Evans v. Charlotte-Mecklenburg Bd. of Educ., No. 3:22-cv-257-MOC-DCK, 2023 WL 300592, at *2 (W.D.N.C. Jan. 18, 2023) (citing N.C. Gen. Stat. § 115C-42).  Under N.C. Gen. Stat. § 115C-42,

> Any local board of education, by securing liability insurance as hereinafter provided, is hereby authorized and empowered to waive its governmental immunity from liability for damage by reason of death or injury to person or property caused by the negligence or tort of any agent or employee of such board of education when acting within the scope of his authority or within the course of his employment. Such immunity shall be deemed to have been waived by the act of obtaining such insurance, but such immunity is waived only to the extent that said board of education is indemnified by insurance for such negligence or tort.

"Well-established North Carolina law holds that courts may not lightly infer a waiver of immunity."  Evans, 703 F.3d at 655 (citing Guthrie, 299 S.E.2d at 627); Magana v. Charlotte-Mecklenburg Bd. of Educ., 645 S.E.2d 91, 92-93 (N.C. Ct. App. 2007) ("Our courts have strictly construed N.C.G.S. § 115C–42 against waiver."  (citing Hallman v. Charlotte-Mecklenburg Bd. of Educ., 477 S.E.2d 179, 181 (N.C. Ct. App. 1996)).

Here, Plaintiffs' Complaint pleads the Board has waived governmental immunity by purchasing liability insurance.  (Doc. No. 1-1 ¶ 8).  Defendants argue the Board has not waived its governmental immunity, and provide the affidavit of Betty Coulter ("Coulter"), the Chief Risk Manager of the Risk Management Office of the City of Charlotte's Finance Department, along

with copies of the Board's insurance policies for the relevant period.[6]  (Doc. No. 3-2).

According to Coulter, during the relevant period, "the only liability insurance that [the Board] had . . . were excess liability policies."  Id. ¶¶ 5-6.  The Board had two excessive coverage liability policies with Safety National Casualty Corp.  Id. ¶¶ 7-9.  These policies cover bodily injury or property damage claims only if the Board is liable for and pays the first $1,000,000 for a claim.  Id. ¶ 9.  The Board also had a commercial excess liability policy issued by Great American Insurance Company, but is triggered only after the Board's $1,000,000 self-insured amount and the Safety National Policies are exhausted.  Id. ¶¶ 14-17.  Coverage under these policies is "not triggered unless and until [the Board] has become liable for and has paid its full $1,000,000 of self-insured retention for a particular claim," which the Board has not done.  Id. ¶¶ 18-19.

"North Carolina's courts have clearly spoken on this matter," and hold that a school board's purchase of a liability insurance policy providing coverage only for damages in excess of the $1,000,000 does not constitute a waiver of governmental immunity.  Evans, 2023 WL 300592 at *3; Magana, 645 S.E.2d at 92-93 (concluding board of education did not waive governmental immunity by purchase of excess insurance policy, stating "[e]ven though plaintiffs seek damages in excess of $1,000,000, the policy provides that it will not indemnify the Board unless the Board has first paid $1,000,000 to the claimant. Since the Board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification."); Devore v. Samuel, 882 S.E.2d 389,

---

[6] Governmental immunity is a jurisdictional defense and courts may consider affidavits and other materials for the limited purpose of considering a governmental immunity defense.  A.G. v. City of Statesville, No. 5:20-CV-00165-KDB-DCK, 2021 WL 2582577, at *1, 7 (W.D.N.C. June 23, 2021); Parris for D.P. v. Cleveland Cnty. Bd. Of Educ., No. 1:22-cv-00087-MR-WCM, 2022 WL 19406949, at *6-7 (W.D.N.C. Dec. 16, 2022), Mem. & R. Adopted, 2023 WL 2366977 (W.D.N.C. Mar. 6, 2023).  "Although the court may consider affidavits submitted by both parties, factual disputes and all reasonable inferences must be made in favor of the party asserting jurisdiction."  Evans v. Charlotte-Mecklenburg Bd. of Educ., No. 3:22-CV-257-MOC-DCK, 2023 WL 300592, at *2 (W.D.N.C. Jan. 18, 2023) (citing White v. Aetna Life Ins. Co., No. 3:20-CV-204-MOC-DSC, 2021 WL 467210, at *2 (W.D.N.C. Feb. 9, 2021)).

394-95 (N.C. Ct. App. 2022) ("[T]his Court repeatedly has held that this type of excess liability coverage does not waive governmental immunity"); Capps v. Cumberland Cnty. Bd. of Educ., No. COA 20-519, 2021 WL 4535699, at *5 (N.C. Ct. App. Oct. 5, 2021) (unpublished) ("The settled rule . . . is that the purchase of a liability insurance policy will not waive governmental immunity when insurance coverage is triggered only upon the government entity's payment of the entire self-insured retention or retained limit."); Ballard v. Shelley, 811 S.E.2d 603, 606-07 (N.C. Ct. App. 2018) ("These cases uniformly have held that excess policies do not waive immunity when they are not triggered until the municipality first pays the entire amount of the self-insured retention."); Irving v. Charlotte-Mecklenburg Bd. of Educ., No. 13-34, 2013 WL 5508370, at *2 (N.C. Ct. App. Oct. 1, 2013) (unpublished). Courts in this District have similarly concluded that a board of education does not waive governmental immunity by purchasing an excess liability insurance policy. See e.g., Evans, 2023 WL 300592 at *3; RM ex rel. MM v. Charlotte-Mecklenburg Cnty. Bd. of Educ., No. 3:16-CV-00528-GCM, 2017 WL 2115108, at *3 (W.D.N.C. May 15, 2017); Sutton v. Charlotte-Mecklenburg Sch., No. 3:18-CV-00161-FDW-DCK, 2018 WL 3637366, at *6 (W.D.N.C. July 31, 2018). Considering the weight of authority, the Court concludes the Board did not waive governmental immunity through the purchase of these insurance policies.[7]

According to Coulter, the Board also had an excess policy provided by Safety National Policy for Educator's Legal and Employment Practices. (Doc. No. 3-2 ¶¶ 10-13). This policy has

---

[7] Plaintiffs also contend that this conclusion is unreasonable and inequitable and is "ripe for overturning as illogical, unreasonable, inequitable, against public policy, regarding every family in our State, with public school-aged children." (Doc. No. 7 at 16-17). This Court is a court of limited jurisdiction bound by the law as it exists in North Carolina and declines Plaintiffs' invitation to overturn the North Carolina courts' interpretation of North Carolina law. Indeed, the court in Devore, 882 S.E.2d at 394-95, on which Plaintiffs appear to rely but distinguish also declined to overrule controlling precedent. Hickerson v. Yamaha Motor Corp., 882 F.3d 476, 485 (4th Cir. 2018) ("[Plaintiff] asks us to do what that court has not done—overrule the South Carolina Court of Appeals on a question of South Carolina law. This we cannot do. Federal courts 'should not create or expand [a] [s]tate's public policy.'" (quoting St. Paul Fire & Marine Ins. Co. v. Jacobson, 48 F.3d 778, 783 (4th Cir. 1995)).

a self-insurance retention amount of $250,000 per wrongful act before coverage is triggered such that it does not waive governmental immunity.  Kline v. Cleveland Cnty., No. 1:19-cv-197-MOC-WCM, 2020 WL 7264463, at *2-3 (W.D.N.C. Dec. 10, 2020) ("[T]he policies contain another provision supporting a finding that Cleveland County is entitled to governmental immunity. That is, the policies provide that the county must pay the self-insured retention amount of $350,000 before coverage is triggered.").  The policy also contains a Governmental Immunity Endorsement provision which states in pertinent part as follows:

> The purchase of this policy is not intended by the Insured to waive its governmental immunity under North Carolina General Statutes Sect. 153A-435 or any other applicable law or statute or amendments thereto.  Accordingly, subject to its terms, conditions and limits, this policy provides coverage only for Wrongful Acts for which the defense of governmental immunity is clearly not applicable or for which, after the defense of governmental immunity is asserted, a court of competent jurisdiction determines the defense of governmental immunity is not applicable.

(Doc. No. 3-2 ¶ 20).  This provision is unambiguous and similar to insurance endorsements that courts hold preserve governmental immunity in North Carolina.  For example, in Evans, the Fourth Circuit concluded that the City of Durham did not waive governmental immunity by purchasing liability insurance policies.  703 F.3d at 655-56.  In that case, the policies included a "governmental immunity endorsement" which stated:

> [T]his policy provides coverage only for occurrences or wrongful acts for which the defense of governmental immunity is clearly not applicable or for which, after the defenses is [sic] asserted, a court of competent jurisdiction determines the defense of governmental immunity not to be applicable.

Id. (alterations in original).  The Fourth Circuit, looking to North Carolina law and applying the clear language of the endorsements, concluded that the city did not waive governmental immunity through purchasing the insurance policies because of the policies' clear language preserving governmental immunity.  Id.; see also Owen v. Haywood Cnty., 697 S.E.2d 357, 359-60 (N.C. Ct. App. 2010) (concluding that insurance policy with exclusion provision for governmental immunity

did not waive governmental immunity); Estate of Earley ex rel. Earley v. Haywood Cnty. Dep't of Social Srvs., 694 S.E.2d 405, 407-10 (N.C. Ct. App. 2010) (concluding county did not waive governmental immunity where the unambiguous language of the insurance policy excluded coverage for claims covered by governmental immunity); Patrick v. Wake Cnty. Dep't of Human Srvs., 655 S.E.2d 920, 923-24 (N.C. Ct. App. 2008) (same); Campbell v. Greiner, No. 5:23-CV-201-FL, 2024 WL 1122044, at *7-8 (E.D.N.C. Mar. 14, 2024) (dismissing tort claims against city where city did not waive governmental immunity through purchase of insurance policy with provision noting the policy does not waive governmental immunity); Kline, 2020 WL 7264463, at *2-3 ("The insurance policies have made clear the intent to specifically preserve sovereign or governmental immunity for all claims to which such immunity applies. The North Carolina Court of Appeals has repeatedly recognized that nearly identical policy provisions are sufficient to preserve governmental immunity."). Thus, the Court concludes the Board did not waive governmental immunity through the purchase of this insurance policy.

According to Coulter, the Board was not covered by any other liability insurance during the relevant period, nor did it participate in any pooled insurance plans or have any liability insurance through the North Carolina School Board's Trust. (Doc. No. 3-2 ¶ 22). Based on Coulter's representations in her affidavit along with the attached insurance policies, the Court concludes that Board did not waive governmental immunity through the purchase of liability insurance and is entitled to governmental immunity.

Accordingly, the undersigned respectfully recommends Defendants' Motion be granted with respect to Plaintiffs' state law claims against the Board.

2.  Public Official Immunity – State Law Claims Against Individual Defendants

Public official immunity "precludes suit against public officials in their individual capacities and protects them from liability 'as long as a public officer lawfully exercises the judgment and discretion with which he is invested by virtue of his office, keeps within the scope of his official authority, and acts without malice or corruption.'" R.A. v Johnson, 36 F.4th 537, 542 (4th Cir. 2022) (quoting Hart v. Brienza, 784 S.E.2d 211, 215 (N.C. Ct. App. 2016)); see also Mitchell v. Pruden, 796 S.E.2d 77, 82 (N.C. Ct. App. 2017) (quoting Fullwood v. Barnes, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016)). To sufficiently state a claim in cases where immunity presumptively applies, the plaintiff must adequately plead one of these exceptions in the complaint. R.A., 36 F.4th at 544.

A "defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." Grad v. Kaasa, 321 S.E.2d 888, 890 (N.C. 1984). "Thus elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Wilcox v. City of Asheville, 730 S.E.2d 226, 230 (N.C. Ct. App. 2012). "An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others." Bartley v. City of High Point, 873 S.E.2d 525, 534 (N.C. 2022). The third element, intent to injure, "can either be 'actual' or 'constructive.'" Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022) (quoting Wilcox, 730 S.E.2d at 231). However, "a showing of mere reckless indifference is insufficient'" to show a constructive intent to injure. Wilcox, 730 S.E.2d at 232; see also Schlossberg v. Goins, 540 S.E.2d 49, 56 (N.C. Ct. App. 2000) ("A Plaintiff may not satisfy [showing malice or corruption] through allegations of mere reckless indifference."). "To amount to constructive intent, 'a plaintiff must show that the defendant's

actions were so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent.'" R.A., 36 F.4th at 545-46 (quoting Wilcox, 730 S.E.2d at 232). "North Carolina law 'presumes that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law,' so evidence of malice 'must be sufficient by virtue of its reasonableness, not by mere supposition.'" Knibbs, 30 F.4th at 227 (quoting Doe v. City of Charlotte, 848 S.E.2d 1, 12 (N.C. Ct. App. 2020)).

To sufficiently allege corruption that pierces public official immunity, a plaintiff must establish that a public official "acted for his own benefit." Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022). "An act is corrupt when it is done with 'a wrongful design to acquire some pecuniary profit or other advantage.'" Green v. Howell, 851 S.E.2d 673, 679 (N.C. Ct. App. 2020) (quoting State v. Hair, 442 S.E.2d 163, 165 (N.C. Ct. App. 1994)). The Supreme Court of North Carolina has held "[t]he simple fact that defendant is paid for his services is insufficient to show that he acted with malice or corruption." Grad, 321 S.E.2d at 891-92.

Simply inserting the words "malice" and "corrupt" before factual allegations is not sufficient to overcome the presumption officials will discharge their duties in good faith and in accordance with the law. See Farrell v. Transylvania Cnty. Bd. of Educ., 625 S.E.2d 128, 134 (N.C. Ct. App. 2006) (citing Meyer v. Walls, 489 S.E.2d 880, 890 (N.C. 1997) and Dalenko v. Wake Cnty. Dept. of Human Servs., 578 S.E.2d 599, 604 (N.C. Ct. App. 2003)); see also Mitchell, 796 S.E.2d at 82 ("Any evidence presented to rebut this presumption [of immunity] must be sufficient by virtue of its reasonableness, not by mere supposition. It must be factual, not hypothetical; supported by fact, not by surmise."); Collum v. Charlotte-Mecklenburg Bd. of Ed., No.3:07-cv-534-RJC-DSC, 2010 WL 702462, at * 10 (W.D.N.C. Feb. 23, 2010) ("It should be

noted that a conclusory allegation that a public official acted maliciously, with corruption, or outside the scope of their duties is not enough to overcome their public official immunity.") (citations omitted); Bernstein v. Sims, No. 5:22-CV-277-BO, 2023 WL 2763108, at *3 (E.D.N.C. Apr. 3, 2023) ("[P]laintiff has made the conclusory statement that [defendant] acted outside the scope of his authority, but her factual allegations are insufficient to pierce public official immunity [and] are therefore dismissed."); Green, 851 S.E.2d at 679 (holding that even though plaintiff used the words "malicious" and "with corrupt intent," "we are not required to treat this allegation of a legal conclusion as true" and plaintiff "failed to allege sufficient facts to overcome the heavy burden of rebutting the presumption" of public official immunity).

Public official immunity applies only to public officials, but not to all public employees. R.A., 36 F.4th at 542. There are certain distinctions between a public official and public employee:

> (1) a public office is a position created by the constitution or statutes; (2) a public official exercises a portion of the sovereign power; and (3) a public official exercises discretion, while public employees perform ministerial duties. Additionally, an officer is generally required to take an oath of office while an agent or employee is not required to do so.

Leonard v. Bell, 803 S.E.2d 445, 449 (N.C. Ct. App. 2017) (quoting Fraley v. Griffin, 720 S.E.2d 694, 696 (N.C. Ct. App. 2011)). All three elements must be met to establish public official immunity. McCullers v. Lewis, 828 S.E.2d 524, 532 (N.C. Ct. App. 2019) (citing Leonard, 803 S.E.2d at 453). "[A] position is considered 'created by statute' when 'the officer's position ha[s] a clear statutory basis or the officer ha[s] been delegated a statutory duty by a person or organization created by statute' or the Constitution." Id. (quoting Baker v. Smith, 737 S.E.2d 144, 148 (N.C. Ct. App. 2012) (alterations in original). When the "created by statute" element is met through delegation of a statutory duty, there must be a statute that directly authorizes the constitutionally or statutorily created person or organization to delegate its statutory duty to

another individual.  Id. at 451.  The existence of a statute defining the duties of a position is not sufficient to establish it was "created" by statute.  Farrell ex rel. Farrell v. Transylvania Cnty. Bd. of Educ., 682 S.E.2d 224, 229 (N.C. Ct. App. 2009).  "North Carolina courts have 'recognized that school officials such as superintendents and principals' are public officials."  R.A., 36 F.4th at 542 (quoting Farrell, 625 S.E.2d at133).

Principal Harrill and Superintendent Hill are public officials and are entitled to public official immunity.  R.A., 36 F.4th at 542.  Plaintiffs' Complaint does not allege sufficient facts to pierce their public official immunity.  Although the Complaint repeatedly asserts "Defendants'" conduct was "malicious" and "corrupt",[8] these assertions are not supported with any specific factual allegations involving Harrill or Hill.  In fact, Hill is only mentioned in the caption of the Complaint and as a party.  (Doc. No. 1-1 ¶ 5).  Similarly, the only conduct specifically attributed to Harrill is that she was allegedly present at a single resulting internal meeting following the incident involving J.R.  Id. ¶¶ 6, 39.  Nowhere in the Complaint does it specifically allege that Harrill or Hill, as opposed to conclusory grouping of Defendants together, were aware of the meeting between Hodge and J.R. or that J.R. was self-harming until the meeting that occurred after Plaintiffs raised their concerns to school administrators.  R.A., 36 F.4th at 545-46 (concluding that plaintiff failed to allege malice to overcome public official immunity because there were no allegations of intent to injure, and noting mere reckless indifference is insufficient to show constructive intent to injure such that failure to report or take corrective action in response to teacher's alleged abuse did not amount to malice as alleged).  Because there are no factual allegations in the Complaint, as opposed to mere conclusory statements, as to how Harrill and Hill

---

[8] Plaintiffs' Complaint also does not allege Hill or Harrill were acting outside the scope of their authority.  In Mr. Robey's jurisdictional affidavit, he conclusory groups all Defendants together and alleges all Defendants were acting "outside the scope of their official authority," but does not provide any specific factual allegations to support it.  This conclusory allegation is insufficient to overcome public official immunity.  (Doc. No. 7-2 ¶ 31).

acted with malice or corruption, Harrill and Hill are entitled to public official immunity with respect to Plaintiffs' state law claims.[9]

Next, as to Hodge, the caselaw is less than clear on whether a school guidance counselor is entitled to public official immunity.  See., e.g., Farrell, 625 S.E.2d at133-34; Farrell ex rel. Farrell, 682 S.E.2d 227-29; Isenhour v. Hutto, 517 S.E.2d 121, 127-28 (N.C. 1999).  There also are questions around Hodge's exact role, whether she was the only school counselor, and whether she exercised supervisory or discretionary authority.  While the Court makes no findings on the ultimate issue, the Court denies Defendants' Motion without prejudice to be re-raised at a later stage subject to additional development as to Hodge's role.

Accordingly, the undersigned respectfully recommends that Defendants' Motion be granted with respect to Plaintiffs' state law claims against Harrill and Hill in their individual capacities.  The undersigned further respectfully recommends that Defendants' Motion be denied without prejudice with respect to Plaintiffs' state law claims against Hodge.

### C. North Carolina Constitutional Claim

An individual may have a direct cause of action against a state official under the provisions of the North Carolina Constitution only when there is no adequate remedy provided by state law.

---

[9] Plaintiffs also attached a jurisdictional affidavit to their response in opposition to Defendants' Motion because public official immunity is a jurisdictional defense. Parris for D.P. v. Cleveland Cnty. Bd. of Educ., No. 1:22-cv-00087-MR-WCM, 2022 WL 19406949, at *3 (W.D.N.C. Dec. 16, 2022) ("Both governmental and public official immunity are jurisdictional defenses."); (Doc. No. 7-2).  The affidavit again makes conclusory allegations grouping Defendants together, that "Defendants, all of them, . . . did not notify me or my family when they first learned of this behavior, back in early Falls of 2022."  (Doc. No. 7-2 ¶ 8).  However, while Plaintiffs can use a jurisdictional affidavit to help establish jurisdiction, Plaintiffs cannot allege new factual allegations in an affidavit that is not included as part of a complaint or amended complaint.  In addition, there are no factual allegations to indicate that Hill, Harrill, or the Board, were aware of Hodge's meeting with J.R. or J.R.'s self-harming.  This conclusory grouping of Defendants together without any factual allegations that Hill and Harrill were actually aware of anything is insufficient to overcome public official immunity.  In any event, as discussed herein, even if there were facts alleging Hill and/or Harrill were aware of J.R.'s self-harming in August or September 2022, mere reckless indifference is insufficient to overcome public official immunity based on alleged malice.  R.A., 36 F.4th at 545-46.

<u>Corum v. Univ. of N.C. Bd. of Governors</u>, 413 S.E.2d 276, 290-91 (N.C. 1992); <u>Davis v. Town of S. Pines</u>, 449 S.E.2d 240, 247-48 (N.C. Ct. App. 1994). "In order for another remedy to be 'adequate,' 'a plaintiff must have at least the opportunity to enter the courthouse doors and present his claim.'" <u>Knibbs</u>, 30 F.4th at 231–32 (quoting <u>Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.</u>, 678 S.E.2d 351, 355 (N.C. 2009)). An adequate state remedy refers to the "possibility of relief," not that plaintiff prevails on those state law claims. <u>Craig</u>, 678 S.E.2d at 355-56. "[T]he affirmative defense of public official immunity does not render common law tort claims inadequate." <u>DeBaun v. Kuszaj</u>, 767 S.E.2d 353, 357 (N.C. Ct. App. 2014); <u>Knibbs</u>, 30 F.4th at 232 (dismissing direct claim under North Carolina constitution because plaintiff had adequate remedy under state law through its claims against individuals in individual capacity despite public official immunity).

Plaintiffs have alleged numerous state law causes of action and have an adequate remedy under state law. <u>Hart for J.G. v. Union Cnty.</u>, No. 3:19-CV-00159-KDB-DCK, 2020 WL 710802, at *6 (W.D.N.C. Feb. 12, 2020) ("Plaintiff has available, adequate, and existing state remedies, including tort claims against Larson. Accordingly, Plaintiff's alternative claim under the North Carolina State Constitution will also be dismissed."). Plaintiffs brought state law tort claims against the individual Defendants in their individual capacities and have the opportunity to present those claims including tort claims against Hodge. <u>Edwards v. City of Concord</u>, 827 F. Supp. 2d 517, 520-24 (M.D.N.C. Dec. 7, 2011) (granting motion to dismiss direct constitutional claim because plaintiff alleged two tort claims against individual in individual capacity which provided the possibility of relief under state law). Consequently, the undersigned respectfully recommends Defendants' Motion be <u>granted</u> with respect to Plaintiffs' direct claims under the North Carolina Constitution.

### D. Official Capacity Claims

Plaintiff captioned his claims against the Hill, Harrell, and Hodge in both their "official capacity" and "individual capacity." "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." <u>Main v. Wingler</u>, No. 5:22-CV-00157-KDB-DCK, 2024 WL 871384, at *4 (W.D.N.C. Feb. 29, 2024) (quoting <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71 (1989)). To the extent Plaintiffs assert "official capacity" claims, these official capacity claims are duplicative of their claims against the Board and should be dismissed. Accordingly, the undersigned recommends Defendants' Motion be <u>granted</u> with respect to Plaintiffs' official capacity claims. <u>See Ridpath v. Bd. of Governors Marshall Univ</u>., 447 F.3d 292, 307 n.13 (4th Cir. 2006).

### E. Punitive Damages

Finally, Defendants ask the Court to dismiss Plaintiffs' request for punitive damages because municipalities and boards of education are immune from punitive damages in the absence of statutory provisions to the contrary. (Doc. No. 3-1 at 17). As an initial matter, the Court notes that it has recommended dismissal of all of Plaintiffs' claims against the Board and the individual Defendants in their official capacity. In any event, Defendants' argument is well-taken. In <u>C.A. ex rel. Scott v. Gaston Cnty. Bd. of Educ.</u>, the Honorable Robert J. Conrad, Jr., interpreting North Carolina law, concluded that punitive damages could not be recovered against a school board absent a statutory provision to the contrary. No. 3:20-cv-228-RJC-DSC, 2021 WL 1217321, at *2-3 (W.D.N.C. Mar. 31, 2021). Plaintiffs do not direct the Court to a statute "explicitly remov[ing] [the Board's] immunity from punitive damages," nor is the Court aware of any. <u>Id.</u> at *3; <u>see also Craven v. Novelli</u>, 661 F. Supp. 3d 430, 455 (W.D.N.C. Mar. 13, 2023), <u>aff'd</u>, No. 23-1393, 2024 WL 1952590 (4th Cir. May 3, 2024) ("With respect to the Town, although a

municipality may be liable for compensatory damages in § 1983 actions, it may not be subjected to punitive damages. . . . Municipalities are also immune from punitive damages for state law claims 'in the absence of statutory provision to the contrary.'" (citing <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) and <u>Jackson v. Hous. Auth. of City of High Point</u>, 341 S.E.2d 523, 525 (N.C. 1986)).  Accordingly, the undersigned respectfully recommends that Defendants' Motion be <u>granted</u> with respect to Plaintiffs' request for punitive damages against the Board only. The Court observes that Defendants did not substantively address the dismissal of requests for punitive damages against any individual Defendant and the Court expresses no opinion or recommendation on that issue.

## IV.    <u>RECOMMENDATION</u>

For the foregoing reasons, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Doc. No. 3) be **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the undersigned respectfully recommends:

1. Defendants' Motion be **GRANTED** with respect to Plaintiffs 42 U.S.C. § 1983 claims and state law claims against the Board only;

2. Defendants' Motion be **GRANTED** with respect to Plaintiffs' state law claims against Superintendent Crystal L. Hill and Principal School Tracey Harrill in their individual capacities;

3.  Defendants' Motion be **DENIED** without prejudice to be re-raised at a later stage of the litigation with respect to Plaintiffs' state law claims against school counselor Adrian Hodge in her individual capacity;

4. Defendants' Motion be **GRANTED** with respect to Plaintiffs' direct claim under the North Carolina Constitution;

5.  Defendants' Motion be **GRANTED** with respect to Plaintiffs' claims against the individual Defendants in their official capacities only; and

6.  Defendants' Motion be **GRANTED** with respect to Plaintiffs' request for punitive damages against the Board only.

## V.    TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same.  Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Id.  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

The Clerk is directed to send copies of this Memorandum and Recommendation and Order to the parties' counsel and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED**.

Signed: August 30, 2024

Susan C. Rodriguez
United States Magistrate Judge